

Signed and Filed: October 25, 2010

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                ) Bankruptcy Case
                                     ) No. 10-31259DM
FREDERICK CARROLL BOWLES,            )
                                     )
                         Debtor.     ) Chapter 13
_____)

MEMORANDUM DECISION ON MOTION TO VALUE COLLATERAL
AND AVOID JUNIOR LIEN

I.  Introduction

On August 25, 2010, the court conducted a trial on the motion ("Motion To Value") of Fredrick Carroll Bowles ("Debtor"), to value property located on Corbett Avenue in San Francisco (the "Property") and to avoid the lien of Pacific Service Credit Union ("Pacific"). Debtor appeared and was represented by Dean L. Woerner, his attorney; Pacific appeared and was represented by Ivo Keller, one of its attorneys.

Following the submission of evidence and closing arguments, the court requested further briefing to address the issue that the Property was not held in Debtor's name, but rather in the name of a trust. The parties responded to the court's inquiry and submitted supplemental memoranda.

For the reasons explained below, the court will grant Debtor's Motion To Value subject to Pacific's right to request a

-1-

further evidentiary hearing.

II. Discussion[1]

    A.   Valuation

Except for the title issue that required further briefing and is discussed below, the sole question for trial on the Motion To Value was whether the Property is of a value such that Pacific is "out of the money," and its junior lien can be avoided as provided in the court's Guidelines For Valuing and Avoiding Liens ("Guidelines").[2] If the value of the Property is such that any portion of Pacific's lien is secured, its lien may not be avoided because the Property is Debtor's residence and Pacific is protected by 11 U.S.C. § 1322(b)(2). If no portion of Pacific's debt is secured by actual value in the Property, the lien can be adversely affected under Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220 (9th Cir. 2002).

Debtor called as its expert on the value of the Property Kathleen R. Parker ("Parker"), a certified real estate appraiser. Pacific called as its expert Howard M. Steiermann ("Steiermann"), a certified general real estate appraiser.

Because of the unhabitable condition of the Property described in detail in the papers, Parker was unable to find

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

[2] Pacific argued that Debtor could not avoid its lien because he caused the Property's decline in value by making alterations without proper permits and by intentionally removing or destroying various components of the structure. It offered no authority to support this argument so that court dismisses it without elaboration. Perhaps on different facts, such as a showing of bad faith, the argument would have merit; that is not the case here.

-2-

Case: 10-31259   Doc# 50   Filed: 10/25/10   Entered: 10/26/10 16:08:11   Page 2 of 8

satisfactory comparable properties in the relevant time period or in the area where the Property is located. While she would have preferred to have located such comparable uninhabitable properties, she resorted to an alternative wherein she made her best judgment as to the Property's post-repair condition, assuming a cost she estimated to bring the Property up to average quality. With that adjustment, she then compared the Property to six comparables, concluding that the Property had a value as of April 17, 2010, of $480,000.

Steiermann was able to identify comparables that were in poor condition such that he did not need to make the type of analysis that Parker did. Two of his three comparables closed escrow after Parker's day of appraisal, and she could not have known of them. His third comparable was still a listing and had not closed escrow as of the date of his report.

Based upon his analysis, Steiermann valued the Property as of August 10, 2010, at $565,000. As noted, if Steiermann's value is accepted by the court, Pacific is in the money by a small amount since the senior deed of trust on the Property secures an obligation of at least $557,209.

While the court would have preferred to compare unhabitable properties with similarly unhabitable properties, it lacks confidence in Steiermann's approach and believes Parker's analysis is more reliable. First, Steiermann admitted to making an incorrect calculation of square footage of the structure located on the Property. While he tended to minimize that error, contending that it would not affect his valuation, the court does not accept that explanation. More specifically, Steiermann said

-3-

that the Property had a gross living area of 1,894 square feet; on cross-examination he admitted the error. Parker's calculation showed a gross living area of 1,546 square feet.

On redirect examination Steiermann contended that the structure had a gross living area of 1,645 square feet, down 250 square feet from his calculation. This represents a reduction of gross living area by more than 13%. While the court does not believe a 13% reduction in Steiermann's valuation of $550,000 would necessarily be appropriate, some downward adjustment would be required.

Steiermann also relied on at least one comparable that had not closed escrow. In the court's experience that is not an acceptable practice and in fact may even be contrary to generally accepted appraisal principles. Thus, if the court eliminates the third comparable that leaves Steiermann with only two compared to Parker's six. Based upon the foregoing questions about the accuracy of Steiermann's appraisal and the more limited comparisons, the court cannot accept his valuation.

From the foregoing the court finds that Parker's appraisal is more credible notwithstanding the alternative methodology she applied. However, based upon that methodology, the court believes it would be appropriate to adjust her valuation upward slightly to $500,000. Thus, the court finds that the Property was worth $500,000 on August 25, 2010, entitling Debtor to avoid Pacific's lien.

B. <u>The Trust Issues</u>

On August 29, 2010, based on information discovered in the Steiermann appraisal, the court entered a docket text order

-4-

observing that title to the Property was held by a trust (and not by Debtor). The court directed Debtor to file a supplement clarifying the status of the title, and requested the parties to address the issue of whether Debtor could strip the lien of Pacific if he did not hold title on the petition date or the date the Motion to Value was filed.

On September 8, 2010, Debtor filed a declaration indicating that he (as an individual) reacquired title to the Property by a deed executed on September 7, 2010, and recorded on September 8, 2010. Debtor explained that he initially acquired title to the Property by a grant deed dated July 24, 2002, and recorded on August 1, 2002. On November 28, 2005, he executed an "Individual Grant Deed" conveying title to himself as Trustee of the Bowles Trust (established on October 11, 2001); that grant deed was recorded on November 14, 2008. On October 29, 2008, Debtor (acting as trustee for the Bowles Trust) executed a grant deed conveying title to Equity Holding Corporation, as Trustee for The Corbett Land Trust; that grant deed was also recorded on November 14, 2008.

Debtor was the settlor of the Bowles Trust and was designated as the sole beneficiary during his lifetime, and as trustee of the Bowles Trust, he could be paid all net income and as much of the principal "necessary for my support, care, health, maintenance, and happiness." The Bowles Trust instruments provided that Debtor (as settlor/trustor) would occupy any principal residence (without payment of rent) and have discretion over decisions to sell such a residence. On November 28, 2005, he executed an amendment to the Bowles Trust Agreement declaring the Property as his principal

-5-

residence.

The Bowles Trust was the sole beneficiary of The Corbett Land Trust, and the trust agreement for The Corbett Land Trust provided that the trustee would hold legal and equitable title to the Property, but that the beneficiary (Bowles Trust) would have a "power of direction to the Trustee" regarding the Property and the right to manage and control the Property. Paragraph 11 provided that the trustee would "on the written direction" of the beneficiary, "make and execute contracts or deeds for the purchase, or sale" of the Property. As noted previously, the Corbett Land Trust reconveyed title to the Property to Debtor, individually, after the April 8, 2010, petition date.

Pacific argued in its supplemental brief that Debtor could not strip its lien on the Property because the debtor's estate did not have an interest in the Property on the petition date or on the date the Motion to Value was filed. It cites 11 U.S.C. § 506(a) and Federal Rule of Bankruptcy Procedure 3012, which allow a court to determine the value of a lien "on property in which the estate has an interest." Neither section 506(a) or Rule 3012, however, place a time limit on when the estate may acquire its interest in the subject property.

To the contrary, the Bankruptcy Code provides that property acquired by a chapter 13 debtor after the petition date (but before closing, dismissal or conversion of the case) becomes property of the estate. 11 U.S.C. § 1306(a). Thus, the estate held an interest in the Property -- at the latest -- when the Trustee of The Corbett Land Trust conveyed title to Debtor individually. Thus, even if the court denied the pending Motion

-6-

to Value, Debtor could file another motion to value under section 506(a) as the Property is now property of the estate.

Normally property held in a revocable trust with the debtor as beneficiary, even with spendthrift provisions, is not insulated from a debtor's creditors. See In re Cutter, 398 B.R. 6, (9th Cir. BAP 2008). But here there is a trust holding a beneficial interest in a second trust. Neither party addressed the issue directly in the supplemental briefing, and Debtor mooted the issue by reacquiring title.

Be that as it may, Pacific has the right to contest the value of the Property at the time Debtor reacquired it. While the court doubts that the Property's value increased in the interval between the appraisals and the date of Debtor's reacquisition of title, that is a fact that Pacific has a right to consider and to act upon. The court will only grant the Motion to Value if Pacific declines the invitation to revisit the question of value as of the later date.

III. Conclusion

Pacific may decide to try again to present evidence to protect its lien from being avoided. The court will give it fourteen (14) days from the date of this Memorandum Decision to file a notice of intention to retry the matter. If it does not file such a notice, counsel for Debtor may submit an order avoiding Pacific's lien for the reasons set forth in this Memorandum Decision and in accordance with the Guidelines.

If, however, Pacific timely expresses an intention to retry the matter, then counsel for both parties should meet and confer and contact the court's Courtroom Deputy (Ms. Lorena Parada (415-

Case: 10-31259    Doc# 50    Filed: 10/25/10    Entered: 10/26/10 16:08:11    Page 7 of 8

268-2323) to set a date for trial.  They should also stipulate to a deadline for exchanging any updated appraisals and follow the procedures in this court's June 10, 2010 Scheduling Order For Evidentiary Hearing On Motion To Value/Avoid Lien for the presentation of any additional expert testimony.

**END OF MEMORANDUM DECISION**